IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

**KELVIN DANIELS**, individually and on
behalf of all those similarly situated,

    Plaintiff,

v.

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY,**

    Defendant.

_____/

**CLASS REPRESENTATION**

Case No.:

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, **KELVIN DANIELS** ("Daniels"), individually, and on behalf of all those similarly situated (the "Class"), brings this action against Defendant, **GOVERNMENT EMPLOYEES INSURANCE COMPANY** ("GEICO"), and alleges as follows:

### Introduction

1.    GEICO insures Daniels and all its Florida individual automobile insurance policyholders using the identical Form A-70FL (03-11) or another policy form with identical language in all relevant provisions (the "Policy"). The Collision and Comprehensive coverages of the Policy, on their faces and as amended to conform with Fla. Stat. § 626.9743(5), allow GEICO to adjust and settle a first-party motor vehicle total loss via a cash settlement by paying the "actual cash value" of the total loss vehicle. The "actual cash value" is its replacement cost less depreciation, which is the actual cost to purchase a comparable motor vehicle. Such "actual cost" may be derived from the retail cost as determined from a generally recognized used motor vehicle industry source, including an electronic database. Fla. Stat. § 626.9743(5)(a)(2).

1

2.     GEICO purported to adjust and settle Daniels's total loss in this manner, but it does not do so in reality. Specifically, GEICO used the CCC ONE Market Value system (the "CCC system"), a proprietary electronic database product licensed from CCC Information Services Inc. ("CCC"), to adjust and settle GEICO's total loss claims in Florida.

3.     This violates Florida law and breaches the Collision and Comprehensive coverages of the Policy in three respects. First, the CCC system is not based upon the "actual cost to purchase a comparable motor vehicle" or "retail cost" because it uses advertised prices and not sales data. Second, the CCC system is not a "generally recognized used vehicle industry source" as required by the Policy and Florida law. Third, it is specifically designed to underestimate the retail cost of comparable motor vehicles, including by using "condition adjustments" to create reduced vehicle values that are not indicative of the actual cost to purchase a comparable motor vehicle and, thus, are not indicative of its replacement cost less depreciation.

4.     To make matters worse, GEICO additionally breaches the Collision and Comprehensive coverages of the Policy and violates Florida law by failing to include in its cash payments the minimum $79.35 in fees charged by the State of Florida in connection with the transfer of title and license to a new vehicle ("title/license fees") and the dealer fees for the costs and profit to the dealer for items such as inspecting, cleaning and adjusting vehicles and preparing documents related to the sale, which fees  are added to the purchase price of vehicles for sale by cash, finance or for lease and are of the type that are required to be disclosed by Fla. Stat. §§ 501.976(11) and 520.02(2) and Fla. Admin. Code § 69V-50.001 and are charged by the overwhelming majority of used car dealer in Florida (the "dealer fees"). Both the title/license and dealer fees constitute part of the "actual cost to purchase a comparable motor vehicle" under § 626.9743(5)(a), just like sales tax, and fall within the Policy's definition of "actual cash value," so they must be paid pursuant to the Policy and § 626.9743(5).

2

5.    GEICO also breaches the Policy by (a) either requiring its total loss policyholders to permanently transfer ownership to it of their total loss vehicles without compensating them for the salvage values of those vehicles or (b) deducting the salvage values of the total loss vehicles from their claim payments.

6.    Daniels and the Class are therefore in doubt to their rights under the Policy with GEICO and seek a declaratory judgment that the Policy does not allow GEICO to adjust and settle total loss claims using the CCC system and that GEICO must pay title/license fees and dealer fees under the Policy. Daniels and the Class additionally petition the Court for supplemental relief in connection with any declaratory judgements rendered by the Court. Daniels and the Class also brings causes of action for breach of contract to recover the damages they suffered as a result of (a) GEICO's use of the CCC system, (b) refusal to pay title/license and dealer fees, and (c) GEICO taking the salvage values of their total loss vehicles.

7.    In conjunction with both their declaratory judgment and breach of contract causes of action, Daniels and the Class seek to recover the reasonable attorneys' fees and costs required to prosecute them.

**Jurisdiction, Parties, Venue**

8.    This is an action asserting class claims for declaratory relief and damages pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), (2) and/or (3).

9.    This Court has jurisdiction because Daniels seeks declaratory relief and because the amount in controversy exceeds $15,000, exclusive of interest, costs, and attorneys' fees.

10.    Currently, Daniels does not have evidence to support that the amount in controversy exceeds $5,000,000.

11.    Plaintiff Kelvin Daniels is, and at all material times has been, a resident of Florida and insured by GEICO.

3

12.     At all times material hereto, GEICO was in the business of selling automobile insurance and adjusting and settling automobile insurance claims, including the sale of Collision and Comprehensive coverages and adjustment and settlement of first-party total loss claims under those coverages. GEICO may be served with process through its registered agent for the service of process in Florida, Jimmy Patronis, the Chief Financial Officer of the Florida Department of Financial Services at 200 E Gaines St, Tallahassee, FL 32399.

13.     Venue is proper in Hillsborough County, Florida, because GEICO is a Foreign Profit Corporation, and it has offices for the transaction of, and agents transacting, its customary business in Hillsborough County.

14.     All conditions precedent to the maintenance of this action have occurred, have been performed, have been waived, or GEICO is estopped from asserting them.

<u>**Factual Allegations Common to Daniels and the Class**</u>

15.     The Policy provides, in pertinent part, as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

**Your Protection For Loss Or Damage To Your Car**

**DEFINITIONS**

The definitions of the terms **auto business, farm auto, non-owned auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your**, and **war** under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  **Actual cash value** is the replacement cost of the auto or property less depreciation or betterment.

2.  **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.

3.  **Collision** means loss caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4.   **Comprehensive** means **loss** caused other than by **collision** and includes the following causes:

4

(a) Missiles:
(b) Falling objects;
(c) Fire;
(d) Lightning;
(e) Theft;
(f) Larceny;
(g) Explosion;
(h) Earthquake;
(i) Windstorm;
(j) Hail;
(k) Water;
(l) Flood;
(m) Malicious mischief;
(n) Vandalism;
(o) Riot;
(p) Civil commotion; or
(q) Colliding with a bird or animal.
…

6. **Depreciation** means a decease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.
…

8. **Loss** means direct and accidental loss of or damage to:
(a) An owned or non-owned auto, including its equipment; or
(b) Other property insured under this section.
…

LOSSES WE WILL PAY

**Comprehensive (Excluding Collision)**

**1.** We will pay for each **loss**, less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**.

**…**

**Collision**

1. We will pay for **collision loss** to the **owned auto** for the amount of each **loss** less the applicable deductible and to the **non-owned auto** for the amount of each **loss** less the applicable deductible when driven by **you** or a **relative**.
   …

**LIMIT OF LIABILITY**

The limit of our liability for loss:

1.  Is the actual cash value of the property at the time of the loss;

    …

5.  For custom parts or equipment is limited to the actual cash value of the custom parts or equipment, not to exceed the actual cash value of the vehicle.
    **Actual cash value** or **betterment** of property will be determined at the time of the loss and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.
    …

### SECTION V- GENERAL CONDITIONS

**These conditions apply to all coverages in this Policy**

…

17. **TERMS OF POLICY CONFORMED TO STATUTES**

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

16.     Pursuant to the Limits of Liability for the Collison and Comprehensive coverages of the Policy and Fla. Stat. § 319.30, GEICO has the right when presented with a claim for damages to a vehicle where the cost to repair would be greater than its actual cash value minus its salvage value to declare the vehicle a total loss and pay the lesser actual cash value.  Of course, when a vehicle is stolen, it is a total loss, and GEICO must pay the actual cash value.

17.     When GEICO declares a vehicle a total loss, it must pay its insureds the vehicle's actual cash value as defined in and pursuant to Fla. Stat. § 626.9743, because to the extent that the Policy on its face is in any way inconsistent with that statute, Florida law and the Policy compel that it be amended to conform to the statute. Thus, if GEICO elects to pay a cash settlement, as it did with Daniels's claim, it must pay "the actual cost to purchase a comparable motor vehicle, including sales tax," which "cost may be derived from: … [t]he retail cost as determined from a

6

generally recognized used motor vehicle industry source such as: … [a]n electronic database…" Fla. Sta. § 626.9743(5)(a)(2)(a). This cash settlement is independent of what the policyholder ends up spending, if anything.  In fact, the policyholder may simply keep the cash settlement and never replace the total loss vehicle. The Policy is not inconsistent with the statute as to what GEICO must pay, because it provides that GEICO will pay the "actual cash value" of the total loss vehicle, which the Policy and Florida common law defines as the replacement cost of the auto less depreciation.

18.     GEICO used the CCC system to determine the actual cash values of Daniels's vehicle as it does with all its Florida automobile insurance policyholders who suffer total losses. The CCC system has the capability to provide a variety of methods for calculating total loss vehicle values which can be chosen by its licensees, here GEICO. Accordingly, in this Complaint, "CCC system" refers to the version of this service used by GEICO.

19.     The CCC system provides total loss valuations automatically based on supposedly comparable vehicle data contained in its computer system and data on the insured's total loss vehicle entered into it by GEICO's adjusters through a computer interface. Among that data entered into the CCC system are the total loss vehicle's Vehicle Identification Number ("VIN"), which provides the vehicle make, model, configuration (e.g., number of doors, engine size, equipment and options), as well as the mileage and license plate number.

20.     The CCC system starts by automatically calculating a "Base Vehicle Value" for the total loss vehicle, as described below, which it adjusts based on the condition of the total loss vehicle. Specifically, GEICO adjusters rate the condition of twelve components (four interior, four exterior, two mechanical and front and rear tires) of the total loss vehicle as "Rough," "Average Private," or "Dealer Retail" with the goal of adjusting the value of the total loss vehicle to the value of the same vehicle in "Average Private" condition. If a component is rated "Rough," it

7

results in a downward adjustment to the total loss vehicle's "Base Vehicle Value." If a component is rated "Average Private," no adjustment is made. And, if a component is rated "Dealer Retail," it results in an upward adjustment to the total loss vehicle's "Base Vehicle Value." Effectively, then, the baseline condition used for total loss vehicles is "Average Private" condition. The CCC system calls the result of taking the "Base Vehicle Value" and making these "total loss vehicle component condition adjustments" the "Adjusted Vehicle Value." To the "Adjusted Vehicle Value" sales tax (calculated as a percentage of the "Adjusted Vehicle Value") is added, resulting in the "Value Before Deductible." GEICO pays the "Value Before Deductible" less the deductible, which it terms the "Total."

21.     The "Base Vehicle Value" is derived by searching the prices advertised by dealers on websites like Autotrader.com, Truecar and dealer websites for anywhere from three to twelve "comparable vehicles" located as close as possible to the insured's residence, adjusting the advertised prices up or down based on mileage, optional equipment and a "Uniform Condition Adjustment" (see below) and then calculating a weighted average of the adjusted prices. According to CCC, the weighting is based on four factors (i) "source of the data (such as inspected versus advertised), (ii) similarity (such as equipment, mileage, and year), (iii) proximity to the loss vehicle's primary garage location, and (iv) recency of information." Upon information and belief, the CCC system omits some of the highest priced comparable vehicles in the area in order to decrease the "Base Vehicle Value."

22.     The supposed purpose of applying the "Uniform Condition Adjustment" to all of the comparable vehicles is to adjust the comparable vehicles to the "Average Private" condition which is used as the baseline condition for the total loss vehicle. To do this, the CCC system assumes all the "comparable vehicles" being offered for sale via a retail advertisement have an overall condition of "Dealer Retail," and it makes a uniform downward price adjustment to all of

8

them to supposedly find their values if they were only in "Average Private" condition like the total loss vehicle after adjustments. This assumption that all of the "comparable vehicles" are in "Dealer Retail" condition is unwarranted, because CCC personnel, on average,  inspect zero to three of the "comparable vehicles" used in a valuation, so they have no actual knowledge of the conditions of the great majority of the "comparable vehicles."

23.     This systematic downward adjustment, which Daniels terms the "Uniform Condition Adjustment," results in a flat and uniform value decrease for each of the "comparable vehicles," thereby lowering the average adjusted prices for the "comparable vehicles," and thereby lowering the total loss vehicle's "Base Vehicle Value."   The CCC system's application of downward adjustments of the exact same dollar amounts to "comparable vehicles" with advertised prices that differ by thousands of dollars could not possibly serve its stated purpose, because vehicles with such different advertised prices could not conceivably all be adjusted to "Average Private" condition from supposedly "Dealer Retail" condition by the exact same dollar amount reduction.

24.     Accordingly, GEICO's use of "Uniform Condition Adjustments" to supposedly reduce "comparable vehicles" from an assumed "Dealer Retail" condition to an "Average Private" condition when creating the "Base Vehicle Value" is  not calculated to and does not result in the replacement cost of the totaled vehicle less depreciation or the actual cost to purchase a comparable motor vehicle. To the contrary, it is designed to result in values less than the replacement cost of the totaled vehicle less depreciation and the actual cost to purchase a comparable motor vehicle. Further, if CCC's assumption that **all** or even the majority of dealer cars have a condition of "Dealer Retail" is correct, such vehicles realistically constitute the comparable motor vehicles available to purchase by an insured at retail, and their "retail cost" should not be adjusted downward to the "Average Private" condition under the terms of Fla. Stat.

9

§ 626.9743(5)(a)(2) and the conformed Policy. Simply put, the use of "Uniform Condition Adjustments" by GEICO is illegitimate, in breach of the Policy and in violation of Florida law.

25.     The CCC system's methodology is different from that of the two most well-known sources of used car values that are generally recognized in the used motor vehicle industry, NADA and KBB.   The NADA and KBB databases use actual sales data, not "adjusted" advertised prices, from a multi-state region.   They each provide a "retail clean" or "dealer" value, which would be the appropriate value to use given that Fla. Stat. § 626.9743(5)(a)(2) requires actual cash value to be based on the retail cost. Regardless of the reasons, in the vast majority of cases, the CCC methodology results in "Adjusted Vehicle Values" that are lower than the NADA and KBB retail clean or dealer values.   Indeed, upon information and belief, CCC presents marketing materials, workshops, and training to prospective, and current, insurance company clients stating that the average market value as determined by the CCC system will result in lower total loss valuations and indemnity savings. GEICO claims adjusters could in every case, including Daniels's case here, obtain the NADA retail clean value contemporaneous to the date of loss through NADA's free online database, but GEICO chooses not to do so based upon the uniform, pre-determined company policy to exclusively use the CCC system. Significantly, NADA offers subscribers to its electronic database the ability to obtain retail clean values at any specific dates in the past ten (10) years.

26.     The CCC system generates a CCC ONE Market Valuation Report ("CCC Report") setting forth the CCC system valuation which GEICO provides to it total loss policyholders. This report is retained in GEICO's electronic claims records.   Despite having the ability to value total loss claims using the NADA electronic database, GEICO uniformly refuses to do so.   In fact, upon information and belief, GEICO refused to negotiate the "Base Vehicle Value" calculated by the CCC system.

27.     The CCC system does not comply with Fla. Stat. § 626.9743(5)(a)(2)(a) and, thus, breaches the Collision and Comprehensive coverages of the Policy for three major reasons. First, the CCC system is not based upon the "actual cost to purchase a comparable motor vehicle" or "retail cost" because it uses advertised prices and not sales data.  The plain meaning of the word "cost" requires use of sales data. Second, it is not "a generally recognized used motor vehicle industry source" for the "retail cost" of used motor vehicles. Indeed, the CCC system is not available to Daniels as a consumer, and it is not marketed to the used motor vehicle industry—car dealers and brokers.  Rather, CCC focuses on selling the CCC system as a subscription service to insurance companies, which are not part of the used motor vehicle industry. And, indeed, insurance companies are virtually the only entities which use the CCC system. Third, the CCC system's selective exclusion of the "comparable vehicles" with the highest advertised prices and its use of systematic downward "Uniform Condition Adjustments" does not result in the replacement cost of the vehicle less depreciation or the actual cost to purchase a comparable motor vehicle at retail.

28.     While GEICO may try to argue otherwise, the CCC system is also not designed to and does not comply with Fla. Stat. § 626.9743(5)(a)(1). When that provision states that "the actual cost to purchase a comparable motor vehicle… may be derived from:…the cost of two or more such comparable vehicles available within the preceding 90 days" (if "comparable motor vehicles are available in the local market area"), it means the actual cost of buying the vehicles, which could only be determined by the actual sales prices of such vehicles.  This provision does not provide for use of an electronic database or system at all, much less one that does not use sales prices but rather mere advertised prices subject to automated deductions calculated to decrease the value of vehicles below actual cost.

29.     Further, despite any GEICO claim to the contrary, the CCC system is not designed to and does not comply with Fla. Stat. § 626.9743(5)(a)(3). It does not obtain "quotes" from dealers—the actual prices for which they commit to sell the cars.  Rather, it takes advertised prices and makes illegitimate "Uniform Condition Adjustments" to those advertised prices, as requested by GEICO.

30.     Additionally, the CCC system does not comply with Fla. Stat. § 626.9743(5)(c) for two reasons. First, it clearly is attempting to fall under § 626.9743(5)(a)(2)(a), and a failed attempt to do that cannot satisfy § 626.9743(5)(c) as a "basis that varies from the methods described in paragraph (a) or paragraph (b)."  Second, that section requires that "the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts."  GEICO does not itemize what comprises the Uniform Condition Adjustment and specify a dollar amount for each part, and it has no documentation to support that the mileage deductions to the comparable vehicles and the illegitimate "Uniform Condition Adjustments" to all comparable vehicles (both "deductions from value") are "in appropriate dollar amounts." Those deductions are calculated automatically by the CCC system based on data in the CCC system and proprietary CCC algorithms, and GEICO has no documentation in its possession to show their calculation or appropriateness.

31.     Fla. Stat. § 626.9743(6) provides as follows:

> (6) When the amount offered in settlement reflects a reduction by the insurer because of betterment or depreciation, information pertaining to the reduction shall be maintained with the insurer's claim file. Deductions shall be itemized and specific as to dollar amount and shall accurately reflect the value assigned to the betterment or depreciation. The basis for any deduction shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be maintained with the insurer's claim file.

32.     Because the Uniform Condition Adjustments purportedly reflect the difference in value between the "Dealer Retail" comparable vehicles and the "Average Private" conditions of the

12

total loss vehicles  and they reduce the values of the comparable vehicles averaged together to calculate the "Base Vehicle Value," they constitute a "reduction by the insurer because of … depreciation" to the total loss vehicles, given the Policy's explanation of "an adjustment for depreciation." Thus, § 626.9743(6) requires GEICO to maintain in each insured's claim file information showing the basis for and calculation of the Uniform Condition Adjustments in accurate amounts. GEICO does not do so, as those deductions are calculated automatically by the CCC system based on data in the CCC system and proprietary CCC algorithms. GEICO may not make the deductions absent maintaining the necessary information in its claim files, so making the deductions breaches the Policy.

33.    Finally, Daniels did not agree on another method with GEICO to value her vehicle. Thus, the CCC system is not designed to, and did not, comply with § 626.9743(5)(d).

34.    In Florida, the "actual cost to purchase a comparable vehicle" and its "retail cost" (as required by the statute) and the "actual cash value" of the total loss vehicle (as required by the Policy) necessarily include numerous fees, including title/license fees and sales tax, because the State of Florida requires a dealer to collect those amounts in connection with the sale and registration of a used motor vehicle. While GEICO pays sales tax, it does not pay the minimum $79.35 in title/license fees that it could reasonably expect its policyholders to incur in connection with the purchase of a replacement vehicle: a $75.25 transfer of title, no lien fee; a $2.50 registration service charge fee; a $1.00 air pollution control fee; a $0.50 Florida Real Time Vehicle Information System fee; and a $0.10 Emergency Medical Services Trust Fund fee. The "actual cost to purchase a comparable vehicle" and the replacement cost less depreciation also includes dealer fees, because the overwhelming majority of used car dealers in the State of Florida charge such dealer fees. While GEICO pays sales tax, it does not pay title/license fees and dealer fees.

13

35.     Moreover, even though a vehicle has been declared a total loss, it still has some monetary (salvage) value, which is not tied to the loss or actual cash value under the Policy. During the total loss settlement process, purportedly relying on Policy terms and its contractual relationship with its insureds, GEICO required its insureds, including Daniels and Class members, to transfer ownership and possession of their totaled vehicles to it in order to receive payment on their total loss claims. It did so without providing them any form of monetary consideration for the salvage value of their vehicles. Alternatively, if Class members retained their salvage vehicles and either sold the vehicles themselves or continued to use them (if still drivable), GEICO deducted the salvage values from the total loss payments made to those Class members. Either way, GEICO took the salvage values of the total loss vehicles.

36.     GEICO takes the total loss vehicles' salvage values even though no provision in the Policy (a) requires insureds to permanently transfer titles of their total loss vehicles to GEICO in order to receive payment for their total loss vehicles; or (b) provides for a deduction of salvage value from actual cash value payments of total loss claims. In the absence of such provisions, GEICO's taking of salvage values as a condition of payment of total loss claims constitutes a breach of the Policy.

### Factual Allegations as to GEICO's Treatment of Daniels

37.     On or about January 27, 2019, Daniels's vehicle ("Covered Vehicle"), a 2014 Chevrolet Camaro, was involved in motor vehicle accident which rendered the vehicle a total loss. At that time, Daniels was a contracting party and named insured under the Policy issued by GEICO, which was in full force and effect.

38.     On or about January 29, 2019, Daniels made a total loss claim with GEICO for payment on his Covered Vehicle.

14

39.     On January 31, 2019, under a cover letter, GEICO affirmed Collision coverage for the Covered Vehicle as a total loss and sent Daniels a CCC Report claiming an "Adjusted Vehicle Value" of the Covered Vehicle of $12,843.00. This value represented a "Base Vehicle Value" of $12,577, plus a combined "component condition adjustment" of +$266.00 for the condition of the Covered Vehicle.   The CCC system calculated the "Base Vehicle Value" of $12,577 by averaging the adjusted prices of eleven "comparable vehicles," only two of which CCC claimed to have inspected.   The advertised prices of the "comparable vehicles" ranged from a low of $10,839 to a high of $17,500. Despite this huge variance in advertised price, the CC12C system applied a "Uniform Condition Adjustment" of -$1,008 to all eleven "comparable vehicles" used to calculate the "Base Value." Neither the cover letter nor the CCC Report contained an adjustment for or offered to pay title/license fees or dealer fees. A redacted copy of the January 31, 2019 cover letter and enclosed CCC Report is attached hereto as Exhibit A.

40.     The NADA database is one several computer databases that is "a generally recognized used motor vehicle industry source." A NADA report showed that the clean retail or dealer value of the Covered Vehicle was in fact $15,025 for a non-dealer certified vehicle. A true and correct copy of the NADA report is attached hereto as Exhibit B. Thus, Daniels's vehicle was undervalued by approximately $2,182, not including an additional $130.92 of applicable sales tax on this additional value and $79.35 in title and license registration fees.

41.     Recalculating GEICO's "comparable vehicles" and the Covered Vehicle without any condition adjustments whatsoever using the CCC system comparable vehicles results in a valuation of $13,585, still $1,440short of the actual replacement cost at retail as evidenced by the NADA report. Even keeping the favorable combined "component condition adjustments" of +$266.00, the resulting Covered Vehicle valuation would be $13,851, still $1,174 less than the actual replacement cost at retail as evidenced by the NADA report. In addition to showing that

15

the CCC system uses the "Uniform Condition Adjustment" to systematically lower the actual cash value paid to less than the real cost to purchase a comparable vehicle at retail, this demonstrates that the CCC system selects "comparable vehicles" and/or uses some other techniques to deliberately undervalue total loss vehicles without even taking into consideration the "Uniform Condition Adjustment," dealer fees and license/title fees.

42.     Also, as with other Class members, after the accident, GEICO also required Daniels to transfer title and possession of the Covered Vehicle to it without compensating Daniels for the salvage value of the Covered Vehicle. Had Daniels refused to transfer title, GEICO would either have refused to pay him or would have deducted the salvage value from its total loss payment to him.

43.     On February 1, 2019, Daniels served GEICO with a demand letter informing GEICO that its adjustment of Daniel's total loss claim violated Florida law and breached the Policy, and requested that GEICO: (a) recalculate the actual cash value of his total loss vehicle using an electronic database that is a generally recognized used motor vehicle industry source, (b) pay him title/license fees, and (c) pay him dealer fees. A true and correct copy of the demand letter dated February 1, 2019 letter is attached hereto as Exhibit C. GEICO did not respond to that letter.

44.     GEICO ultimately only paid Daniels its CCC Report value amount, plus sales tax, and minus his Collision deductible.

45.     Daniels is in doubt of his rights as to whether his vehicle was valued with a method that complied with Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy.

46.     Daniels is further in doubt of his rights as to whether Fla. Stat. § 626.9743(5) and the Policy require payment of dealer fees and title/license fees by GEICO.

47.     Daniels is further in doubt of his rights as to whether the Policy allows GEICO to require its insureds to transfer title of their Covered Vehicles to GEICO before it makes payments on their total loss claims or deduct the salvage values from their insureds' total loss payments because the insured retained their total loss vehicles.

48.     Daniels is still insured by GEICO and he can reasonably expect that he may suffer additional total losses in the future and he is in doubt as to his rights in that event.

### Class Action Allegations

49.     Pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), (2) & (3), Daniels brings Count I of this action for declaratory judgment on his own behalf and on behalf of the Class defined below. Pursuant to Rule 1.220(b)(1)(A) & (3), he brings Counts II, III and IV for breach of contract on his own behalf and on behalf of the Class defined below.

50.     The Class consists of and is defined as all individuals who: (a)during the Class Period ; (b) are or were covered by a GEICO Florida personal automobile insurance policy; (c) made a claim under the Collision or Comprehensive coverage of that policy for damage or loss to a covered vehicle which GEICO accepted and treated as a total loss claim; and (d) GEICO paid the claim or offered to pay the claim (which offer remains unaccepted) on a cash settlement basis with the actual cash value derived from the CCC system  (hereafter the "Class"). The class period will be from September 27, 2014, to the date of class certification (hereinafter the "Class Period").

51.     Daniels reserves the right to amend the Class and/or add sub-class definitions as discovery proceeds and to conform to the evidence.

52.     While the exact number of Class members is unknown at this time, Daniels submits, based upon his counsel's representation of automobile accident victims in Florida, that there are

at least a hundred GEICO policyholders spread throughout the State of Florida who are potential Class members in this action.   Accordingly, separate joinder of all Class members would be impracticable.

53.     This action poses questions of law and fact that are common to and affect the rights of all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, the following:

a.   Whether GEICO's use of the CCC system to adjust and settle first-party motor vehicle total loss claims breaches the Policy and violates Florida law?

b.   Whether GEICO's refusal to pay dealer fees breaches the Policy and violates Florida law?

c.   Whether GEICO's refusal to pay title/license fees breaches the Policy and violates Florida law?

d.   Whether Daniels and the other Class members were damaged by GEICO's use of the CCC system in the amount of the difference between the "Base Vehicle Value" of the total loss vehicle and the NADA clean retail or dealer value for the vehicle plus the additional sales tax on that amount?

e.   Alternatively, whether Daniels and the other Class members were damaged by GEICO's use of the CCC system in the amount of the difference between the "Adjusted Vehicle Value" of the total loss vehicle and the NADA clean retail or dealer value for the vehicle plus the additional sales tax on that amount?

f.   Alternatively, whether Daniels and the other Class members were damaged by GEICO's use of the CCC system in the amount of Uniform Condition Adjustment used in their CCC Reports plus the additional sales tax on that amount?

g.  Whether Daniels and the other Class members were damaged in the amount of the average or typical dealer fees in Florida GEICO refused to pay?

h.  Whether Daniels and the other Class members were damaged in the amount of the title/license fees GEICO refused to pay?

i.  Whether Daniels and the other Class members are entitled to a declaration of their rights under the Policy and Florida law?

j.  Whether the Policy clearly and unambiguously permits GEICO to take the salvage values of its insureds' total loss vehicles by either (a) requiring them to transfer title and possession of the total loss vehicles to GEICO without compensating them for the salvage values of the vehicles or (b) deducting the salvage values from the insureds' total loss payments;

k.  Whether GEICO thereby breached the Policy as to Daniels and the Class, entitling them to recover from GEICO the amounts GEICO received from the sales of their total loss vehicles or the amounts GEICO deducted from their total loss payments for "salvage value," as the case may be; and

l.  Whether Daniels and the other Class members are entitled to recover reasonable attorneys' fees and costs in connection with the successful prosecution of their declaratory judgment and/or breach of contract causes of action?

54.  Daniels's claims are typical of the claims of the other members of the Class, because they all arise out of the exact same policies and practices of GEICO and under the exact same theories of law.

55.  Daniels will adequately represent the Class, because he and the undersigned counsel he has retained have no conflicts of interest with the other Class members, she is ready, willing and able to represent the Class, and the undersigned retained attorneys are very experienced class

19

action practitioners with extensive experience in prosecuting class actions against automobile insurers.

56.     Daniels and the Class's declaratory judgment and breach of contract causes of action may be maintained as a class action pursuant to Rule 1.220(b)(1)(A), because the prosecution of separate claims by individual Class members would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for GEICO.  For example, the court in one case might rule that GEICO must pay title/license and dealer fees while another might rule that it does not have to do so. GEICO would be left in an untenable legal limbo in such an event, because Florida law requires it to treat all insureds the same under similar circumstances.

57.     Daniels's declaratory judgment cause of action may also be maintained as a class action pursuant to Rule 1.220(b)(2), because GEICO has acted and refused to act on grounds generally applicable to all members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.  Specifically, GEICO has in the past and will in the future adjust total loss claims the exact same way in breach of the Policy and in violation of Florida law, making declaratory relief for the Class as to its members' rights under the Policy and Florida law appropriate.

58.     Daniels's declaratory judgment and breach of contract causes of action may also be maintained as a class action pursuant to Rule 1.220(b)(3), because the questions of law or fact common to Daniels and the Class predominate over any questions of law or fact affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As demonstrated by paragraph 53 above, all the questions necessary for resolution of GEICO's liability to Daniels and the Class are common. The only individual issues are the amounts of damages, and they may be calculated on a

mechanical, ministerial basis without the need for the trier of fact to individually decide them.

59.     More specifically, the damages to each Class member from GEICO's use of the CCC system can be calculated by subtracting the "Base Value" or the "Adjusted Value" from the NADA value and then performing the multiplication necessary to calculate the additional sales tax on that amount. To the extent any NADA values are not already in GEICO's possession, they can be obtained from the NADA system. Alternatively, the damages for each Class member are the amount of the Uniform Condition Adjustment used in their CCC Report plus the additional sales tax on that amount which can be calculated with simple multiplication. Regarding title/license fees damages, a reasonable assumption for a cash payment is that each Class member will necessarily incur at a minimum a $75.25 transfer of title, no lien fee, a $2.50 registration service charge fee, a $1.00 air pollution control fee, a $0.50 Florida Real Time Vehicle Information System fee, and a $0.10 Emergency Medical Services Trust Fund fee such that each Class member is entitled to recover the exact same $79.35 for GEICO's refusal to pay title/license fees, as a matter of law. Daniels can also provide evidence of the average or typical dealer fee in Florida; which amount can be awarded to every Class member for GEICO's refusal to pay dealer fees. Also, the damages to Daniels and each Class member from GEICO taking the salvage value of the total loss vehicle can be determined using GEICO's electronic records, which will show either the amount received by GEICO for each total loss vehicle it sold or the amount GEICO deducted for salvage value from each Class member's total loss payment. Such information is readily available in GEICO's electronic records.

60.     A class action is superior because the amounts recoverable by individual Class members are not sufficient to justify individual suits against a large corporation like GEICO which can be expected to vigorously defend every such suit as a matter of precedent. For that reason, Class members do not have a real interest in individually controlling their separate claims.  Further, the

overwhelming majority of Class members do not even know they have such claims to sue over. Simply put, there are no alternatives to a class action to resolve this controversy.

61.     Even if individual suits were feasible and likely to be filed, it would be highly inefficient and a waste of the parties' and the court system's resources to repeatedly adjudicate the same factual and legal issues.  Plus, it could result in undesirable inconsistent adjudications as set forth above.  Thus, it is highly desirable to concentrate the litigation in this forum, which is well equipped to resolve the controversy for all Class members and GEICO.

62.     There are no unusual difficulties likely to be encountered in the management of this case as a class action.  Florida law applies to all Class members' claims, and the legal issues are simple matters of statutory and contractual interpretation. All Class members are readily ascertainable from GEICO's records, including physical addresses and email addresses (in most cases), making the provision of notice routine. And, as previously explained, damages are easily and readily calculable for each Class member on a mechanical, ministerial basis.

## Count I – Class Action for Declaratory Relief

63.     Daniels and the Class re-allege and incorporate by reference Paragraphs 1-62 above.

64.     Daniels and the Class take the positions that the Collision and Comprehensive coverages of the Policy, on their faces and as amended to conform with Fla. Stat. § 626.9743(5)(a) (if necessary): (a) do not allow GEICO to adjust and settle first party motor vehicle total losses using the CCC system;  (b) require it to pay title/license and dealer fees on total loss claims; and (c) do not allow it to take the salvage values of total loss vehicles. GEICO disagrees with these positions and uniformly uses the CCC system to adjust and settle such claims, refuses to pay title/license and dealer fees in connection with such claims, and takes the salvage values of total loss vehicles.

65.    Daniels and the other Class members are in doubt concerning their rights, and a bona fide present controversy exists between them and GEICO concerning the proper interpretation of Fla Stat. § 626.9743(5) & (6) and the Policy and the parties' respective rights and obligations thereunder.

66.    The rights, status, or other equitable or legal relations of the parties are affected by the Policy and Fla Stat. § 626.9743(5) & (6).  Accordingly, pursuant to Fla. Stat. § 86.021, Daniels and the Class may obtain a declaration of their rights, status, or other equitable or legal relations thereunder.

67.    Section 86.011, Florida Statutes states that this Court has "jurisdiction … to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

68.    Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to Daniels and the Class, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the insurance policy and applicable law.

69.    Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or non-existence … Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether GEICO's past conduct has been unlawful in order to prevent the same unlawful conduct in the future.

70.    Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a … contract, … or whose rights, status, or other

equitable or legal relations are affected by a statute … may have determined any question of construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as Daniels and the Class) who is in doubt about his rights under the Policy and any applicable laws.

71.    Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether USAA has violated the terms of the Policy and applicable law and whether its conduct will violate the Policy and applicable law in the future.

72.    Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the GEICO 's past conduct in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

73.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."  Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

74.     Section 86.061, Florida Statutes provides, in pertinent part, that the Court may grant further or supplemental relief based on a declaratory judgment.

75.     A determination of the rights of Daniels and the Class under the Policy and law regarding the Policy's Collision and Comprehensive coverages for the underlying total loss claims will terminate the controversies specified in the previous paragraphs.

76.     Daniels and the Class now petition this Court for a declaration that GEICO's use of the CCC System is an invalid method of valuing vehicles under Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy. They also seek further or supplemental relief in the form of an order that GEICO must recalculate their total loss claims using a method that complies with Fla. Stat. § 626.9743(5) and make them new offers based upon the same if the recalculated amounts exceed the amounts paid based on the CCC system.

77.     Daniels and the Class additionally petition this Court for a declaration that Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy require payment of title/license and dealer fees as part as part of a total loss settlement. They also seek further or supplemental relief in the form of an order requiring GEICO to offer dealer fees to them.

78.     Daniels and the Class additionally petition this Court for a declaration that the Policy does not grant them the right to take the salvage values of their total loss vehicles such that doing so breaches the Policy. They also seek further or supplemental relief in the form of an order requiring GEICO to pay them the salvage values of their total loss vehicles.

79.     Daniels has retained the undersigned counsel to prosecute this action and she and the Class are entitled to recover their reasonable attorneys' fees and costs for pursuing this cause of action pursuant to Fla. Stat. § 627.428.

### Count II - Class Action for Breach of Contract by Use of the CCC System

80.     Daniels and the Class re-allege and incorporate by reference Paragraphs 1-62 above.

81.     The Policy constituted binding contacts between GEICO and Daniels and the other Class members. Pursuant to Florida law and the Policy itself, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

82.     As explained above, by using the CCC system to adjust and settle the first-party motor vehicle total losses of Daniels and the Class, GEICO breached the Collision and Comprehensive coverages of the Policy as to them. Such breach proximately injured Daniels and each Class member in the amount of the difference between the "Base Vehicle Value" or the "Adjusted Vehicle Value" calculated by the CCC system for the Class member's total loss vehicle and the NADA database retail clean or dealer value for the vehicle, plus the additional sales tax on that amount. Alternatively, the breach proximately injured each in the amount of the Uniform Condition Adjustments in their CCC Report, plus the additional sales tax on that amount.

83.     Pursuant to Fla. Stat. § 627.428, Daniels and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this cause of action.

**Count III - Class Action for Breach of Contract for Title/License and Dealer Fees**

84.     Daniels and the Class re-allege and incorporate by reference Paragraphs 1-62 above.

85.     The Policy constituted binding contacts between GEICO and Daniels and the other Class members. Pursuant to Florida law and the Policy itself, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

26

86.     As explained above, by refusing to pay Daniels and the Class $79.35 in license/transfer fees owed to them under Florida law, GEICO breached the Policy. Such breach proximately injured Daniels and each Class member in the aforementioned amount.

87.     Additionally, as explained above, by refusing to pay Daniels and the Class the dealer fees they would presumptively incur, GEICO breached the Collision and Comprehensive coverages of the Policy.  Such breach proximately injured Daniels and each Class member in the amount of the average or typical dealer fees in Florida

88.     Pursuant to Fla. Stat. § 627.428, Daniels and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this causes of action.

### **Count IV - Class Action for Breach of Contract for Taking Salvage Values**

89.     Daniels and the Class re-allege and incorporate by reference Paragraphs 1-62 above.

90.     The Policy constituted binding contacts between GEICO and Daniels and the other Class members. Pursuant to Florida law and the Policy itself, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

91.     As explained above, by taking the salvage values of Daniels's and the Class' total loss vehicles, GEICO breached the Policy. Such breach proximately injured Daniels and each Class member in the amounts received by GEICO from the sales of their total loss vehicles (if ownership was transferred to GEICO) or the amounts deducted by GEICO for "salvage" from their total loss payments.

92.     Pursuant to Fla. Stat. § 627.428, Daniels and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this cause of action.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Kelvin Daniels and the Class respectfully request the Court to award the following relief against GEICO:

a.      Issue an order certifying that this action is properly maintainable as a class action under Rule 1.220(b)(1)(a), (2) and/or (3) and appointing Daniels to represent the Class defined herein;

b.      Issue an order appointing the undersigned law firms as class counsel;

c.      Grant a judgment pursuant to Count I against GEICO to Daniels and the other members of the Class declaring the parties' respective rights and obligations under the Policy and Florida law and ordering further or supplemental relief as set forth above;

d.      Grant a judgment pursuant to Counts II, III and IV against GEICO awarding Daniels and the other members of the Class damages for breach of contract as set forth above;

e.      Grant a judgment against GEICO pursuant to Counts I, II, III and/or IV awarding Daniels and the Class their reasonable attorneys' fees and costs incurred in this action pursuant to Fla. Stat. § 627.428;

f.      Grant a judgment pursuant to Counts II, III and IV against GEICO awarding Daniels and the Class pre-judgment and post-judgment interest at the maximum rates permissible at law or in equity; and

g.      Grant a judgment against GEICO awarding Daniels and the Class all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

## Demand for Jury Trial

Daniels and the Class hereby demand a trial by jury on all the issues so triable.

Respectfully Submitted,

*/s/Scott R. Jeeves*

Scott R. Jeeves, Esquire FBN 0905630
Primary Email: sjeeves@jeeveslawgroup.com
Secondary Email: khill@jeeveslawgroup.com
            lawclerk@jeeveslawgroup.com
rmandel@jeevesmandellawgroup.com
**THE JEEVES LAW GROUP, P.A**.
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929

and

Craig E. Rothburd, Esquire FBN 49182
Email: crothburd@e-rlaw.com
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800

and

Casim Adam Neff, Esquire FBN 94030
**NEFF INSURANCE LAW, PLLC**

P.O. Box 15063
St. Petersburg, FL 33733-5063
Telephone: (727) 342-0617
Primary: cneff@neffinsurancelaw.com

and

Edward H. Zebersky, Esq. FBN 0908370
Mark S. Fistos, Esq. FBN 909191
**ZEBERSKY PAYNE, LLP**
110 S.E. 6th Street, Suite 210
Ft. Lauderdale, FL 33301
Telephone: (954) 989-6333
Emails: ezebersky@zpllp.com;
mfistos@zpllp.com; ndiaz@zpllp.com

and

Alec H. Schultz, Esq. FBN 35022
Carly A. Kligler, Esq. FBN 83990
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800

29

Coral Gables, FL 33134
Telephone: (305) 740-1975
Primary: ashultz@leoncosgrove.com;
ckligler@leoncosgrove.com

and

John Randall Whaley, (La. Bar # 35930)
*(to appear pro hac vice)*
**WHALEY LAW FIRM**
3112 Valley Creek Drive, Suite D 650
Baton Rouge, LA 70808
Telephone: (225) 302-8810
Facsimile: (225) 302-8814
Email: jrwhaley@whaleylaw.com

**ATTORNEYS FOR PLAINTIFF KELVIN
DANIELS AND THE CLASS**

# Exhibit A

 **Government Employees Insurance Company**

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

1/31/2019

Kelvin Daniels



Dear Kelvin Daniels,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 727-735-2196. You can also access your claim information at GEICO.com.

Sincerely,

Christopher Schuller



Encl:     SHCL30

## TOTAL LOSS SETTLEMENT EXPLANATION

Date                       January 31, 2019
Accident Date              January 27, 2019
Claim Number               █████████████
Company                    Government Employees Insurance Company
Vehicle                    2014 CHEV Camaro LT1
VIN                        ████████████████████

Dear:  Kelvin Daniels,

This is a brief explanation of your claim settlement:

| | |
|---|---|
| Base Value | $12,577.00 |
| Condition Adjustment | $266.00 |
| Pre Tax Adjustment | $0.00 |
| Tax | $895.58 |
| Total Value | $13,738.58 |
| State and Local Regulatory Fees | $0.00 |
| Post Tax Adjustment | $0.00 |
| Less Deductible | $500.00 |
| Less Percent Negligent        0% | $0.00 |
| Less Retention Amount | $0.00 |
| Net Settlement Amount | $13,238.58 |
| Towing Charges | $0.00 |
| Storage Charges | $0.00 |

State law requires that owners of total loss or salvage motor vehicles apply for a salvage certificate within 10 days after a total loss settlement.

Does Apply                 Does Not Apply
   ☐                          ■

Any state sales tax due the owner through replacement of the vehicle will be considered when notice is given and purchase invoice presented.

Does Apply                 Does Not Apply
   ☐                          ■

Adjuster Christopher Schuller          Telephone No. ████████████████

Customer's Signature   _____

CL-30  (10-13)

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals.

# We'll get you back on the road fast!

The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar
or call 877-638-4126*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

 **MARKET VALUATION REPORT**

*Prepared for GEICO*

 # REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Daniels, Kelvin |
| | ▓▓▓▓▓▓▓▓▓▓▓▓ |
| | ▓▓▓▓▓▓▓▓▓▓▓▓ |
| Loss Vehicle | 2014 Chevrolet Camaro LT1 |
| Loss Incident Date | 01/27/2019 |
| Claim Reported | 01/29/2019 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 91663119 |
| Claim Reference | ▓▓▓▓▓▓▓▓▓ |
| Adjuster | Schuller , Chris |
| Appraiser | Schuller, Christopher |
| Odometer | 76,063 |
| Last Updated | 01/29/2019 11:53 AM |

## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 12,577.00** |
| Condition Adjustment | + $ 266.00 |
| **Adjusted Vehicle Value** | **$ 12,843.00** |
| Vehicular Tax (6.9733%) | + $ 895.58 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 13,738.58** |
| Deductible | - $ 500.00 |

| **Total** | **$ 13,238.58** |
|---|---|

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 6% fewer than average mileage of 80,700.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

**Inside the Report**

Valuation Methodology...............................2
Vehicle Information....................................3
Vehicle Condition......................................6
Comparable Vehicles..............................8
Valuation Notes......................................12
Supplemental Information.....................13

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** MARKET VALUATION REPORT

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE**   MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim: ▮▮▮▮▮▮▮▮▮▮▮▮▮

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | TAMPA, FL  33624 |
| VIN | ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| Year | 2014 |
| Make | Chevrolet |
| Model | Camaro |
| Trim | LT1 |
| Body Type | Coupe |
| Engine - | |
|     Cylinders | 6 |
|     Displacement | 3.6L |
|     Fuel Type | Gasoline |
|     Carburation | Direct Injection |
| Transmission | 6 Speed Transmission |
| Curb Weight | 3722 lbs |

> Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.
>
> Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Package 1: Rs | | + 140 |
| **Odometer** | 76,063 | + 475 |

**Options**

| | | |
|---|---|---|
| Xenon Headlamps | Package 1 | + 58 |
| Aftermarket Film Tint | Reported | + 50 |
| Rear Spoiler | Package 1 | + 150 |
| Aluminum/Alloy Wheels | Not Present | - 200 |
| 20" Or Larger Wheels | Package 1 | + 400 |

Reported* Option(s) added after initial valuation

> Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.
>
> The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

| Owner: Daniels, Kelvin |
| Claim: |

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Package 1:** | Rs | |
| **Odometer** | 76,063 | |
| **Transmission** | 6 Speed Transmission | ✓ |
| **Driver Convenience** | Keyless Entry | ✓ |
| | Message Center | ✓ |
| | Power Driver Seat | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Trunk/Gate Release | ✓ |
| | Cruise Control | ✓ |
| | Intermittent Wipers | ✓ |
| | Tilt Wheel | ✓ |
| | Telescopic Wheel | ✓ |
| | Steering Wheel Touch Controls | ✓ |
| | Console/Storage | ✓ |
| **Instrument Panel** | Traction Control | ✓ |
| | Stability Control | ✓ |
| | Positraction | ✓ |
| | Air Conditioning | ✓ |
| | Rear Defogger | ✓ |
| | Hands Free | ✓ |
| | Communications System | ✓ |
| **Radio** | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |
| | Auxiliary Audio Connection | ✓ |
| | Satellite Radio | ✓ |
| **Safety** | Air Bag (Driver Only) | ✓ |
| | Passenger Air Bag | ✓ |
| | Front Side Impact Air Bags | ✓ |

To the left is the equipment of the loss vehicle that GEICO provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

📋 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim:

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Head/Curtain Air Bags | ✓ |
| Paint | Clearcoat Paint | 📋 |
| Front End | Fog Lamps | ✓ |
| | Xenon Headlamps | 📋 |
| | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Anti-lock Brakes (4) | ✓ |
| Glass And Mirrors | Dual Mirrors | ✓ |
| | Aftermarket Film Tint | 📋 |
| Seats | Cloth Seats | ✓ |
| | Bucket Seats | ✓ |
| | Reclining/Lounge Seats | ✓ |
| | Power Passenger Seat | ✓ |
| Rear End | Rear Spoiler | 📋 |
| Wheels | 4-wheel Disc Brakes | ✓ |
| | 20" Or Larger Wheels | 📋 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

| | Owner: Daniels, Kelvin |
| | Claim: ████████████████ |

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | DEALER RETAIL | **Notes:** some dirt, no seepage or leaks, everything firm<br>**Guideline:**<br>**Transmission:** Fluid translucent and may be slightly discolored. No seepage.<br>**Engine:** No seepage. Belts and hoses firm, show minimal wear. Minimal dirt, no grease in engine compartment. | $ 126 |
| Tires | ROUGH | **Notes:** 3/32 avg<br>**Guideline:**<br>**Rear Tires:** 40% or less of new.<br>Example: Typical new car tires are 11/32, loss measures at 3/32 = 28% (3/11)<br>**Front Tires:** 40% or less of new.<br>Example: Typical new car tires are 11/32, loss measures at 3/32 = 28% (3/11) | - $ 112 |
| Paint | DEALER RETAIL | **Notes:** no fading or peeling<br>**Guideline:**<br>Minimal surface chipping and/or scratches. Minor swirl marks. | $ 126 |
| Body | AVERAGE PRIVATE | **Notes:** left door and fender has mutuple dings<br>**Guideline:**<br>**Sheet Metal:** Few dents and/or numerous dings. No significant surface rust.<br>**Trim:** Minimal damage to components. Few dents and/or numerous dings. | $ 0 |
| Glass | AVERAGE PRIVATE | **Guideline:**<br>Light surface scratches and/or pitting. Few chips. | $ 0 |
| Seats | AVERAGE PRIVATE | **Notes:** wear, bare spot<br>**Guideline:**<br>Lightly soiled, faded and/or discolored. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |

GEICO uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim: ▉▉▉▉▉▉▉▉▉▉▉▉▉

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

|  | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Carpets | AVERAGE PRIVATE | **Notes:** soiled, some wear, small holes by gas peddle<br>**Guideline:**<br>Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | DEALER RETAIL | **Notes:** nothing broken or missing<br>**Guideline:**<br>No significant scratches and/or gouges. Components firmly intact and functional. No significant wear. | $ 84 |
| Headliner | DEALER RETAIL | **Notes:** no holes or tears<br>**Guideline:**<br>Clean. No significant holes and/or burn marks. No significant scuffing. | $ 42 |
| **Total Condition Adjustments** | | | **$ 266** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Daniels, Kelvin
Claim:

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Rs | ✔ | ✘ | ✘ | ✘ |
| Odometer | 76,063 | 57,689 | 103,662 | 47,965 |
| Automatic Transmission | ✘ | ✔ | ✔ | ✔ |
| 6 Speed Transmission | ✔ | ✘ | ✘ | ✘ |
| 4 Wheel Drive | ✘ | ✘ | | ✘ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Remote Starter | ✘ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✘ | ✘ | ✔ | ✘ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Communications System | ✔ | ✔ | ✔ | ✔ |
| Navigation System | ✘ | ✔ | ✘ | ✘ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Satellite Radio | ✔ | ✔ | ✔ | ✔ |
| Electric Glass Roof | ✘ | ✘ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |

**Comp 1**    Updated Date: 12/30/2018
**2014 Chevrolet Camaro Lt1 6 3.6l
Gasoline Direct Injection**
**VIN** 2G1FB1E30E9246999
**Dealership** Jim Browne Chevrolet
**Telephone** (813) 935-3100
**Source** Truecar
**Stock #** D854046B
**Distance from Tampa, FL**
4 Miles - Tampa, FL

**Comp 2**    Updated Date: 12/29/2018
**2014 Chevrolet Camaro Lt1 6 3.6l
Gasoline Direct Injection**
**VIN** 2G1FB1E36E9320717
**Dealership** Elder Ford Of Tampa-natio
**Telephone** (813) 397-1217
**Source** Autotrader
**Stock #** J5162164A
**Distance from Tampa, FL**
4 Miles - Tampa, FL

**Comp 3**    Updated Date: 01/07/2019
**2014 Chevrolet Camaro Lt1 6 3.6l
Gasoline Direct Injection**
**VIN** 2G1FB1E34E9167139
**Dealership** Five Star Auto Sales Of T
**Telephone** (813) 562-2024
**Source** Autotrader
**Stock #** 167139
**Distance from Tampa, FL**
4 Miles - Tampa, FL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

†The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Daniels, Kelvin
Claim:

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Metallic Paint | ✘ | ✘ | ✔ | ✔ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Xenon Headlamps | ✔ | ✔ | ✘ | ✘ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Aftermarket Film Tint | ✔ | ✘ | ✘ | ✘ |
| Cloth Seats | ✔ | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✘ | ✘ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✘ | ✘ | ✔ | ✔ |
| 20" Or Larger Wheels | ✔ | ✔ | ✘ | ✘ |

compared to in the Vehicle Condition section.

| List Price | | $ 15,491 | $ 10,839 | $ 15,995 |
|---|---|---|---|---|
| **Adjustments:** | | | | |
| | Package | + $ 140 | + $ 140 | + $ 140 |
| | Options | - $ 436 | + $ 222 | - $ 128 |
| | Mileage | - $ 1,399 | + $ 2,074 | - $ 2,056 |
| | Condition[1] | - $ 1,008 | - $ 1,008 | - $ 1,008 |
| **Adjusted Comparable Value** | | **$ 12,788** | **$ 12,267** | **$ 12,943** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

9/27/2019 3:15 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 43

 **CCC ONE**   MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim:

# 🔍 COMPARABLE VEHICLES

## 🚗 ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4**<br>Source: Inspected Inventory<br>Veterans Ford<br>Tampa, FL<br>(813) 962-1100<br>2 Miles From Tampa, FL | **2014 Chevrolet Camaro Lt1 6 3.6l Gasoline Direct Injection**<br>Odometer: 13,944<br>VIN: 2G1FB1E31E9151920<br>Stock #: E9151<br>Updated Date: 11/30/2018 | $ 17,500<br>(Take) | $ 12,425 |
| **Comp 5**<br>Source: Inspected Inventory<br>Ocean Honda<br>Port Richey, FL<br>(727) 815-0400<br>18 Miles From Tampa, FL | **2014 Chevrolet Camaro Lt1 6 3.6l Gasoline Direct Injection**<br>Odometer: 60,062<br>VIN: 2G1FB1E3XE9171275<br>Stock #: 0082<br>Updated Date: 12/18/2018 | $ 14,857<br>(Take) | $ 12,297 |
| **Comp 6**<br>Source: Truecar<br>C&I Motors<br>Tampa, FL<br>(813) 889-7300<br>5 Miles From Tampa, FL | **2014 Chevrolet Camaro Lt1 6 3.6l Gasoline Direct Injection**<br>Odometer: 39,859<br>VIN: 2G1FB1E31E9165672<br>Stock #: 8240<br>Updated Date: 01/27/2019 | $ 15,995<br>(List) | $ 12,895 |
| **Comp 7**<br>Source: Autotrader<br>Ferman Buick Gmc Chrysler<br>Lutz, FL<br>(866) 407-0936<br>8 Miles From Tampa, FL | **2014 Chevrolet Camaro Lt1 6 3.6l Gasoline Direct Injection**<br>Odometer: 54,802<br>VIN: 2G1FB1E35E9168459<br>Stock #: CJ12402B<br>Updated Date: 01/27/2019 | $ 14,550<br>(List) | $ 12,385 |
| **Comp 8** | | | |

**Additional Comparable Vehicles** are in summary format, but are adjusted the same as those on the previous page.

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Take Price** is the amount that the dealership will accept to sell the inspected vehicle, though a lower price may be obtainable through negotiation.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** | MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim: ▮▮▮▮▮▮▮▮▮▮▮▮

# 🔍 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| | | | |
|---|---|---|---|
| Source: Truecar<br>Ferman Chevrolet Tampa<br>Tampa, FL<br>(813) 623-2411<br>13 Miles From Tampa, FL | **2014 Chevrolet Camaro**<br>**Lt1 6 3.6l Gasoline Direct**<br>**Injection**<br>Odometer: 41,305<br>VIN: 2G1FB1E34E9255706<br>Stock #: CF14385A<br>Updated Date: 01/27/2019 | $ 16,488<br>(List) | $ 12,886 |
| **Comp 9**<br>Source: Autotrader<br>Dimmitt Cadillac Land Rov<br>Clearwater, FL<br>(727) 797-7070<br>14 Miles From Tampa, FL | **2014 Chevrolet Camaro**<br>**Lt1 6 3.6l Gasoline Direct**<br>**Injection**<br>Odometer: 42,038<br>VIN: 2G1FB1E39E9258701<br>Stock #: KA782810B<br>Updated Date: 01/27/2019 | $ 16,749<br>(List) | $ 12,764 |
| **Comp 10**<br>Source: Truecar<br>Dick Norris Buick Gmc Of<br>Clearwater<br>Clearwater, FL<br>(727) 536-1967<br>16 Miles From Tampa, FL | **2014 Chevrolet Camaro**<br>**Lt1 6 3.6l Gasoline Direct**<br>**Injection**<br>Odometer: 39,190<br>VIN: 2G1FB1E34E9151393<br>Stock #: C11181<br>Updated Date: 01/27/2019 | $ 16,971<br>(List) | $ 13,343 |
| **Comp 11**<br>Source: Truecar<br>Maus Nissan<br>New Port Richey, FL<br>(727) 597-4587<br>16 Miles From Tampa, FL | **2014 Chevrolet Camaro**<br>**Lt1 6 3.6l Gasoline Direct**<br>**Injection**<br>Odometer: 31,189<br>VIN: 2G1FB1E34E9155931<br>Stock #: 18N1523A<br>Updated Date: 01/20/2019 | $ 15,300<br>(List) | $ 11,540 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** | **MARKET VALUATION REPORT**

# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GEICO, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Statutes concerning vehicle value include Florida Statute XXXVII - 626.9743.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim: ████████████

# SUPPLEMENTAL INFORMATION

 **SALVAGE TITLE THRESHOLD**

Salvage title threshold amount:          $ 12,020.00

**VEHICLE HISTORY INFORMATION**

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**ISO Vehicle History:**

| | |
|---|---|
| **Number of times reported to ISO:** | 2 |
| **ISO's file number:** | ████████████ |
| Loss date: | 01/27/2019 |
| Phone: | 8008413000 |
| Claim ref: | ████████████ |
| Loss date: | 07/05/2017 |
| Phone: | ████████████ |
| Claim ref: | 0467625315 |

**Vehicle Market History Information:**

This vehicle was reported to CCC on 12/30/2015      Mileage: 28089
Location: CCC Inspected in SAINT PETERSBURG, FL

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Daniels, Kelvin
Claim:

# SUPPLEMENTAL INFORMATION

### EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damaged Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✓ | No Accident Record Found |
| Corrected Title | ✓ | No Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi use | ✓ | No Taxi use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

CCC provides GEICO information reported by Experian regarding the **2014 Chevrolet Camaro (2G1FF1E3XE9256573)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✓ No Event Found
⛔ Event Found
ℹ️ Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim:

# SUPPLEMENTAL INFORMATION

📖 **FULL HISTORY REPORT RUN DATE: 01/29/2019**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 02/25/2014 | FL | 8 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 02/25/2014 | CLEARWATER, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/25/2014 | CLEARWATER, FL | | Dealer Service | FUEL SYSTEM SERVICED |
| 02/25/2014 | CLEARWATER, FL | | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |
| 02/25/2014 | CLEARWATER, FL | | Dealer Service | VEHICLE FLUIDS SERVICED |
| 02/25/2014 | CLEARWATER, FL | | Dealer Service | PROMOTIONAL SERVICE PERFORMED |
| 02/28/2014 | CLEARWATER, FL | 9 | Dealer Service | VEHICLE DETAILED |
| 03/06/2014 | CLEARWATER, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 03/10/2014 | CLEARWATER, FL | 460 | Dealer Service | ELECTRICAL SYSTEM SERVICED |
| 03/11/2014 | CLEARWATER, FL | 461 | Dealer Service | VEHICLE DETAILED |
| 03/11/2014 | CLEARWATER, FL | | Dealer Service | BODY SERVICE PERFORMED |
| 05/16/2014 | CLEARWATER, FL | 3542 | Dealer Service | MULTIPLE POINT VEHICLE INSPECTION |
| 05/16/2014 | CLEARWATER, FL | | Dealer Service | RECOMMENDED MAINTENANCE PERFORMED |
| 05/16/2014 | CLEARWATER, FL | | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |
| 05/16/2014 | CLEARWATER, FL | | Dealer Service | LUBE, OIL AND/OR FILTER CHANGED |
| 09/30/2014 | CLEARWATER, FL | 7442 | Dealer Service | RECOMMENDED MAINTENANCE PERFORMED |
| 09/30/2014 | CLEARWATER, FL | | Dealer Service | ELECTRICAL SYSTEM SERVICED |
| 09/30/2014 | CLEARWATER, FL | | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |
| 09/30/2014 | CLEARWATER, FL | | Dealer Service | LUBE, OIL AND/OR FILTER CHANGED |
| 09/30/2014 | CLEARWATER, FL | | Dealer Service | BODY SERVICE PERFORMED |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** **MARKET VALUATION REPORT**

Owner: Daniels, Kelvin
Claim:

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 03/09/2015 | CLEARWATER, FL | 13214 | Dealer Service | MULTIPLE POINT VEHICLE INSPECTION |
| 03/09/2015 | CLEARWATER, FL | | Dealer Service | ENGINE SERVICED |
| 03/09/2015 | CLEARWATER, FL | | Dealer Service | RECOMMENDED MAINTENANCE PERFORMED |
| 03/09/2015 | CLEARWATER, FL | | Dealer Service | VEHICLE DETAILED |
| 03/09/2015 | CLEARWATER, FL | | Dealer Service | BODY SERVICE PERFORMED |
| 04/10/2015 | CLEARWATER, FL | 14708 | Dealer Service | VEHICLE FLUIDS SERVICED |
| 04/21/2015 | CLEARWATER, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/27/2015 | CLEARWATER, FL | 21110 | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |
| 06/27/2015 | CLEARWATER, FL | | Dealer Service | PROMOTIONAL SERVICE PERFORMED |
| 11/24/2015 | FL | 28098 | Auto Auction | REPORTED AT AUTO AUCTION |
| 11/27/2015 | FL | 28108 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 11/27/2015 | SAINT PETERSBURG, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/31/2015 | SAINT PETERSBURG, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 10/12/2016 | SAINT PETERSBURG, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 02/06/2017 | PORT RICHEY, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/18/2017 | HUDSON, FL | | Dealer Service | HEAT OR AIR CONDITIONING SERVICED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | AIR FILTER CHANGED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | MULTIPLE POINT VEHICLE INSPECTION |
| 12/18/2017 | HUDSON, FL | | Dealer Service | BRAKES SERVICED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | LUBE, OIL AND/OR FILTER CHANGED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | BODY SERVICE PERFORMED |
| 12/18/2017 | HUDSON, FL | | Dealer Service | VEHICLE FLUIDS SERVICED |
| 01/03/2018 | HUDSON, FL | | Dealer Service | VEHICLE DETAILED |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC ONE  MARKET VALUATION REPORT

Owner: Daniels, Kelvin
Claim: ▬▬▬▬▬▬▬▬▬▬

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 01/08/2018 | FL | 57632 | Auto Auction | REPORTED AT AUTO AUCTION |
| 01/22/2018 | FL | 57632 | Auto Auction | REPORTED AT AUTO AUCTION AS DEALER VEHICLE |
| 03/24/2018 | FL | 57637 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 03/24/2018 | TAMPA, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/12/2018 | TAMPA, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Daniels, Kelvin
Claim: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# SUPPLEMENTAL INFORMATION

## NHTSA VEHICLE RECALL

**NHTSA Campaign ID :** 13V463000

**Mfg's Report Date :** SEP 26, 2013

**Component :** EQUIPMENT

**Potential Number Of Units Affected :** 18,941

**Summary :** General Motors (GM) is recalling certain model year 2013 and 2014 Chevrolet Camaro Coupes manufactured June 9, 2013, through September 6, 2013. In the affected vehicles, the required air bag warning label on the sun visor may peel off. Thus, these vehicles fail to comply to Federal Motor Vehicle Safety Standard No. 208 "Occupant Crash Protection."

**Consequence :** If the air bag warning label detaches from the visor, the driver and front seat passenger may not be warned of the risks of air bag deployment, increasing the risk of injury in the event of a crash.

**Remedy :** GM will notify owners, and instruct owners how to inspect the visor sticker. As necessary, dealers will replace the sun visor, free of charge. The recall began on October 28, 2013. Owners may contact GM at 1-800-521-7300. GM's recall campaign number is 13284.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID :** 14V346000

**Mfg's Report Date :** JUN 20, 2014

**Component :** ELECTRICAL SYSTEM

**Potential Number Of Units Affected :** 464,712

**Summary :** General Motors LLC (GM) is recalling all 2010-2014 Chevrolet Camaro vehicles manufactured December 3, 2008 to May 23, 2014. In the affected vehicles, the driver may accidentally hit the ignition key with their knee, unintentionally knocking the key out of the run position, turning off the engine.

**Consequence :** If the key is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury. Additionally, a key knocked out of the run position could cause loss of engine power, power steering, and power braking, increasing the risk of a vehicle crash.

**Remedy :** GM will notify owners, and dealers will remove the key blade from the original flip key/RKE transmitter assemblies, and provide two new keys and two key rings per key. The manufacturer has not yet provided a notification schedule. Owners may contact Chevrolet customer service at 1-800-222-1020. GM's number for this recall is 14294. Note: Until the recall has been performed, it is very important that drivers adjust their seat and steering column to allow clearance between their knee and the ignition key.

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Owner: Daniels, Kelvin
Claim: ███████████████

# SUPPLEMENTAL INFORMATION

**Notes :** Owners may also contact the National Highway Traffic Safety Administration
Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to
www.safercar.gov.

---

**NHTSA Campaign ID :** 14V409000

**Mfg's Report Date :** JUL 02, 2014

**Potential Number Of Units Affected :** 106

**Summary :** General Motors LLC (GM) is recalling certain model year 2014 Buick Regal,
Cadillac XTS, Chevrolet Camaro and Chevrolet Impala vehicles. Improperly torqued
fasteners may cause the steering intermediate shaft and the steering gear and/or the
lower control arm and the lower ball joint to separate.

**Consequence :** If any of the components separate, the vehicle may have a loss of
steering, increasing the risk of a crash.

**Remedy :** GM began to notify owners on June 27, 2014, and dealers will inspect the
fasteners for correct torque, correcting them as necessary, free of charge. Owners may
contact GM customer service at 1-800-521-7300 (Buick), 1-800-458-8006 (Cadillac) or
1-800-222-1020 (Chevrolet). GM's number for this recall is 14378.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Exhibit B

1/30/2019

**NADA** Used Cars/Trucks

**Neff Insurance Law, PLLC**

PO Box 15063
St. Petersburg, FL 33733
7273420617
cneff@neffinsurancelaw.com

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2014 Chevrolet Camaro Coupe 2D LT |
| | 3.6L V6 Manual |
| **Region:** | Southeastern |
| **Period:** | January 27, 2019 |
| **VIN:** | 2G1FF1E3XE9256573 |
| **Mileage:** | 76,063 |
| **Base MSRP:** | $25,755 |
| **Typically Equipped MSRP:** | $26,850 |
| **Weight:** | 0 |



## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | $8,625 | -$415 | N/A | **$8,210** |
| Average | $10,650 | -$415 | N/A | **$10,235** |
| High | $12,700 | -$415 | N/A | **$12,285** |
| **Trade-In** | | | | |
| Rough | $10,250 | -$475 | $950 | **$10,725** |
| Average | $11,475 | -$475 | $950 | **$11,950** |
| Clean | $12,475 | -$475 | $950 | **$12,950** |
| | | | | |
| Clean Loan | $11,175 | -$475 | $950 | **$11,650** |
| Clean Retail | $14,425 | -$475 | $1,075 | **$15,025** |

*The auction values displayed include typical equipment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| RS Package | $950 | $1,075 |

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2019 J.D.Power.

Exhibit C



Casim Adam Neff, Esq.
Neff Insurance Law, PLLC
cneff@neffinsurancelaw.com

PO. Box 15063
St Petersburg, FL 33733
(727) 342-0617

February 1, 2019

Chris Schuller
GEICO
5810 W. Cypress St., Suite A
Tampa, FL 33607

RE:

Claim #:
Insured/Client:        Kelvin Daniels
Vehicle:               2014 Chevy Camaro LT1
DOL:                   1/27/19

Dear Mr. Schuller,

Please allow this letter to act as Neff Insurance Law, PLLC's notice that it is currently representing the above named client, for the above referenced claim number in regards to his/her collision/comprehensive total loss claim and coverages. Your office can reach me at the contact information listed at the top of this page. If you have any questions, please do not hesitate to reach out to me.

Second, please send my office a copy of your office's total loss settlement report/valuation workup of my client's vehicle, and any settlement sheet explaining each of the payments your office offers to make. Please also send my office copies the repair estimates for my client's vehicle, as well as copies of all photographs taken of my client's vehicle.

Third, please also advise where my client's vehicle is currently located, and whether it is accruing any daily storage fees. Please advise if GEICO intends to move my client's vehicle from the current location, and if so, when. Also, please advise how much gas in in my client's vehicle at the time of your repair estimate.

Fourth, pursuant to Fla. Stat. §627.4137(1), please consider this letter my client's written request for disclosures via statement under oath regarding the each known policy of insurance, including excess or umbrella insurance, of:

(a) The name of the insurer.
(b) The name of each insured.
(c) The limits of the liability coverage.
(d) A statement of any policy or coverage defense which such insurer reasonably believes is

Page **1** of 2



Casim Adam Neff, Esq.
Neff Insurance Law, PLLC
cneff@neffinsurancelaw.com

PO. Box 15063
St Petersburg, FL 33733
(727) 342-0617

available to such insurer at the time of filing such statement.
(e) A copy of the policy.

Fifth, my client requests that your company disclose the name and coverage of each known insurer to the parties in this loss, and further requests that your company supply the Fla. Stat. §627.4137(1) information required above to all affected insurers.

Finally, it appears that your offices has chosen to pay a cash settlement to my client for his vehicle as determined from an electronic database, specifically the CCC One Database. My client's position is that use of the CCC One Database violates § 626.9743(5)(a)(2) and thus breaches the Policy because the CCC One Database is not a "generally recognized used motor vehicle industry source." We would ask your office to review the valuation of my client's vehicle using a generally recognized used motor industry source, such with the NADA or KBB guidebooks. We would also ask you to include in any cash settlement offer to include an additional amount of replacement costs for dealer fees, and an additional amount of replacement costs for license plate transfer and title registration fees.

Sincerely,

/s/

Casim Adam Neff, Esq. - Neff Insurance Law, PLLC